# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DARNELL BROWN, JR.<br><br>Defendant. | Case No. CR06-0055<br><br>REPORT AND RECOMMENDATION |

_____

This matter comes before the court pursuant to defendant's February 5, 2007, motion to suppress evidence (docket number 144). The matter was referred to the undersigned United States Magistrate Judge for the issuance of a report and recommendation. The court held an evidentiary hearing on this motion on February 16, 2007, at which the defendant was present and represented by Anne M. Laverty. The government was represented by Assistant United States Attorney Patrick Reinert. It is recommended that the motion to suppress be granted in part and denied in part.

In this motion, the defendant contends that statements made by him after his arrest on April 21, 2005, should be suppressed as violations of the rule set forth in Miranda v. Arizona, 384 U.S. 436 (1966). The government contends that the defendant's first statement was not the product of interrogation, that the second statements made by the defendant fall within the routine booking exception to Miranda, and that the last statements made by the defendant followed a knowing and voluntary waiver of his Miranda warnings. The court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

On April 21, 2005, the police made a controlled purchase of crack cocaine from the defendant in the Hy-Vee grocery store parking lot in the 1500 block of 1st Avenue NE in

Cedar Rapids, Iowa. Police officer Dale Moyle observed the transaction and made a call over the radio for a uniformed officer to arrest the defendant. The defendant was a front seat passenger in an automobile that also had a driver and a female passenger in the back seat.

Sergeant Dave Dostal of the Cedar Rapids Police Department was in the area in a marked police vehicle. He observed the defendant in a vehicle at the Hawkeye convenience store at 1st Avenue and 16th Street. Dostal was aware that the defendant had a warrant outstanding for his arrest for a probation violation. He also had a photograph of the defendant to assist in determining who to arrest. As Dostal approached the vehicle, he observed that the driver was not in the car. The female passenger in the backseat was later identified as Rondesha Roundtree. Dostal commanded the occupants of the car to raise their hands. He then physically took the defendant out of the vehicle and placed him on the pavement to be handcuffed. During this encounter, which lasted approximately a minute or less, Dostal asked the defendant for his social security number so he could verify that he was arresting the correct person. As the defendant was being lead away to a police vehicle, the defendant spontaneously called to Ms. Roundtree, "Have my money?"

The defendant was taken to the Cedar Rapids Police Department to be interviewed by CRPD narcotics officer Chip Joecken. It is Joecken's practice to begin such interviews by securing personal information. The information is then given to the assistant county attorney or assistant United States attorney together with the results of the interrogation. The questions seek information concerning name, date of birth, social security number, and address. There are a number of questions designed to determine whether the defendant has the ability to waive <u>Miranda</u> rights. This includes questions concerning education, recent substance abuse, and the like. <u>See</u> Government's Exhibit 1 (pp. 2-4).

After the form was filled out, the defendant was given his <u>Miranda</u> warnings in writing. The defendant informed the police that he could not read or write. Accordingly, the form was then read and explained to the defendant by another officer, Tony Robinson. The defendant specifically stated that he understood his rights and that he was willing to

talk with the police officers. When asked to sign the Miranda waiver form, the defendant declined. At the suppression hearing, the defendant testified that, because he does not read or write, he was unwilling to sign any document for fear of "signing over his life." The defendant then made exculpatory and inculpatory statements.

The defendant has significant experience with the criminal justice system. He has prior convictions for drug-related activity. In fact, on November 3, 2004, he was taken into custody by Cedar Rapids police officers. At that time, after receiving his Miranda warnings, the defendant invoked his right to remain silent. As noted above, the defendant testified at the hearing. He testified that he had very little recollection of his interrogation at the police department. He does not remember whether he was asked for his social security number, he did not remember being given any forms, he did not remember giving the police officers his telephone number or whether he told them about mental issues as a juvenile. He testified that he did not remember whether the police officers gave him his rights that day and then testified that they did not tell him about his right to remain silent and right to counsel. Other than to explain why he refused to sign the Miranda waiver form, his testimony was not particularly helpful.

## CONCLUSIONS OF LAW

### Interrogation

A defendant is entitled to the protections set forth in Miranda v. Arizona, 384 U.S. 436 (1966), whenever he is subjected to custodial interrogation. The statement that the defendant made at the time of arrest to the female passenger of the car "have my money?" was not the product of interrogation. There was absolutely no evidence at the hearing suggesting that the defendant had been asked any question during that brief custodial encounter with the police other than his social security number.

### Routine Booking Exception

The statements made by the defendant to Officer Joecken prior to the delivery of Miranda warnings are important to the government's case. The defendant gave officers a telephone number which is the same telephone number that was used by the police to set

up the controlled delivery of narcotics. However, the police also seized that cellular telephone and were able to capture the number and subpoena records concerning its usage. The defendant also told Officer Joecken where he lived and who he lived with. The person with whom he lived signed the contract for the cellular telephone at issue. The government contends that this information falls within the routine booking exception to Miranda.

In Pennsylvania v. Muniz, 496 U.S. 582 (1990), the United States Supreme Court ruled that there is a routine booking exception to Miranda. In that case, the police asked the defendant his name, address, height, weight, eye color, date of birth, and current age as a part of booking him into a jail. The Supreme Court held that custodial interrogation for purposes of Miranda includes both express questioning and words or actions that, given the officer's knowledge of any special susceptibilities of the suspect, the officer knows or reasonably should know are likely to have the force of a question on the accused and therefore be reasonably likely to elicit an incriminating response. Pennsylvania v. Muniz, at 601. Because routine booking questions are not ordinarily likely to elicit an incriminating response, the defendant was not entitled to Miranda warnings.

As the Eighth Circuit Court of Appeals held in United States v. Brown, 101 F.3d 1272 (8th Cir. 1996), a request for routine information necessary for basic identification purposes is not interrogation under Miranda, even if the information turns out to be incriminating. Only if the government agent should reasonably be aware that the information sought, while merely for basic identification purposes in the usual case, is directly relevant to the substantive offense charged, will the question be subject to scrutiny. Brown at 1274. However, when questions concerning prior residence, family members, and telephone numbers are not reasonably sought for the booking process, the exception from Pennsylvania v. Muniz does not apply. See United States v. Virgen-Moreno, 265 F.3d 276 (5th Cir. 2001). Where, however, the defendant gave his telephone number as part of a postal inspector's routine booking process as a part of a standard booking form, this information can be admissible. United States v. Broadus, 7 F.3d 460 (6th Cir. 1993).

In this case against Mr. Brown, the information elicited pursuant to the personal information questionnaire (Government's Exhibit 1, pp. 2-4) should be suppressed. First, Officer Joecken was not booking the defendant when these incriminating statements concerning his cellular telephone number and address were given. Second, the information was not forwarded to the jail. Rather, Joeckens' intention was to forward this information to the prosecutor. Third, the information sought goes way beyond routine biographical information collected as a part of a booking process. In addition to basic identifying information, Joecken received information concerning the name and address of the defendant's high school, his roommate, his parents' telephone number, the defendant's hearing, vision, understanding, speaking, reading, writing, and remembering problems, past psychiatric history, medical condition, use of medicine, alcohol, illegal drugs, prior criminal history, and the ability to distinguish right from wrong. The fact that the first few pieces of information received is similar to booking information does not qualify it for the Pennsylvania v. Muniz exception. Officer Joecken had just seized the defendant's cellular telephone. He was involved in the process of making controlled buys from this defendant using that cellular telephone number. The cellular telephone was subscribed to by a roommate at the defendant's address. Under these circumstances, Officer Joecken should have known that a truthful answer to these questions was likely to elicit an incriminating response.

It should be noted that the government seized the defendant's cellular telephone. From an examination of the telephone they could tell what the telephone number is and the government has already subpoenaed records pursuant to that observation. Accordingly, the government does not need the information set forth in the questionnaire.

Waiver of Miranda Rights

The government bears the burden of proving by a preponderance of the evidence that the defendant knowingly, voluntarily, and intelligently waived his rights. United States v. Barahona, 990 F.2d 412, 418 (8th Cir. 1993). If the government can establish that the suspect "knowingly, and intelligently waived his privilege against self-

incrimination and his right to retained or appointed counsel," his statements elicited during questioning are admissible. Grubbs v. Delo, 948 F.2d 1459, 1466 (8th Cir. 1991) (citing Miranda v. Arizona, 384 U.S. 436, 475 (1966)). However,

> [w]hether a defendant waives his constitutional rights has two distinct inquiries. "First, the relinquishment of the rights must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." Moran v. Burbine, 475 U.S. 412, 421, 106 S. Ct. 1135, 1141, 89 L. Ed. 2d 410 (1986). "Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Id.

United States v. Caldwell, 954 F.2d 496, 504 (8th Cir. 1992). Whether the defendant has waived his rights is examined in the totality of the circumstances and the entire course of police conduct, id. at 505 (citing Oregon v. Elstad, 470 U.S. 298, 318 (1985)), including the background, experience, and conduct of the accused. Barahona, 990 F.2d at 418. The defendant must be capable of understanding the warnings provided him and the consequences of his decision to waive his rights. Caldwell, 954 F.2d at 505 (citing Moran v. Burbine, 475 U.S. 412, 422 (1986)). A defendant has made a valid waiver of his rights where the defendant responded to questioning without invoking his rights to counsel or to remain silent, and no evidence of police coercion existed. Id. at 504. "[C]oercion can be mental as well as physical, and . . . the blood of the accused is not the only hallmark of an unconstitutional inquisition." Arizona v. Fulminante, 499 U.S. 279 (1991) (quoting Blackburn v. Alabama, 361 U.S. 199, 206 (1960)).

The government has demonstrated by a preponderance of the evidence that the defendant knowingly, voluntarily, and intelligently waived his Miranda rights. Despite his illiteracy, the defendant is an experienced user of the criminal justice system. He did not suggest in his testimony that there was any intimidation, coercion, or deception used by the police to get him to waive his Miranda rights. Months earlier, the defendant was in a similar situation and invoked his right to remain silent. Accordingly, this defendant is aware of the system and his ability to choose to be interrogated or remain silent. His

rights were orally read to him and explained by Officer Tony Robinson.  While the defendant refused to sign the waiver of <u>Miranda</u> warnings, his testimony made it clear that this was a product of his illiteracy, not a desire to invoke his right to remain silent.  The statements he made after receiving and waiving his rights should not be suppressed.

For the reasons discussed above, **IT IS RECOMMENDED**, unless any party files objections[1] to this Report and Recommendation within ten (10) days of the date of the report and recommendation, that the defendant's February 5, 2007, motion to suppress evidence (docket number 144) be granted in part and denied in part in accordance with the text above.

February 20, 2007.

*[signature]*
JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT

---

[1]Any party who objects to this report and recommendation must serve and file specific, written objections within ten (10) court days from this date.  A party objecting to the report and recommendation must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections.